# McINTYRE et al. v. BYRNE

[No. 233, September Term, 1957.]

*Decided May 21, 1958.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Malcolm J. Coan,* with whom was *Katherine A. McIntyre* on the brief, for the appellants.

*Walter C. Mylander, Jr.,* with whom were *Paul L. Plack* and *Charles C. W. Atwater* on the brief, for the appellee.

Prescott, J., delivered the opinion of the Court.

The first matter to be disposed of in this appeal is the appellee's motion to dismiss the appeal. This motion is based upon alleged violations of Maryland Rule 828 by the appellant. As we have decided to overrule the motion, we shall not consider it in detail; but, we shall say that the motion

presents a very close question for our decision. The Rule is clear, definite and certain; there is little excuse for having an attorney's compliance therewith questioned, much less to have it closely challenged. The substantial rights of litigants to have judgments and decrees reviewed upon appeal should not be jeopardized by the possibility of failing to comply, or reluctance to comply, with a Rule so easy to follow. We are constrained to say that the appellant in this case barely escaped dismissal of the appeal. The motion is overruled.

There is only one question on the merits of the case for our decision, and that is not very complicated. The action is in ejectment and both sides agree that the record title of the appellee depends upon the proper interpretation of the last will and testament of Nicholas Allender, *i. e.*, if under said will the 4.25 acre parcel in question (Parcel B as later designated) passed unto the appellee's predecessor in title, Nicholas Bowen Allender, who was the son of Nicholas Allender, then the appellee's record title is conceded. On the other hand, if said 4.25 acre parcel did not pass under said last will and testament unto Nicholas Bowen Allender but passed to William R. Allender, another son, then the record title of the appellee is disputed.

The pertinent provisions of the will are as follows:

> "To my son, William R. Allender that portion of my Real Estate lying on the left hand side of the Public Road leading from the old Joppa Road to Henry Record's Saw Mill on the Little Gunpowder Falls, said *Portion being separate from the Rest of my Real Estate,* and his heirs forever." (Emphasis supplied).

In the next paragraph thereof the testator devised the rest and residue of his real estate unto two other sons, Nicholas Bowen Allender and another. As stated above, it is conceded that if the 4.25 acre parcel of land passed under the quoted provision of the will, then the appellee's record title is not complete; but, if it passed under the "rest and residue" provision, then her record title is complete.

In order that the opinion may be followed more easily and

to prevent the necessity for lengthy descriptions, the Court has had prepared a plat, which is a small version of Plaintiff's Exhibit No. 1, and it will be included in the reports.

B is the 4.25 acre parcel of ground in dispute, which was owned by Nicholas Allender when he made his will and at the time of his decease. C is a 22 acre parcel that lies on both sides of the road shown, which was not owned by Nicholas Allender either at the time he executed his will or at his death. D is a 68 acre parcel owned by Nicholas Allender when he made his will and at the time of his death, and is now owned by the appellants. E is a 59.03 acre parcel, which

includes B, that was deeded, by metes and bounds description, to the appellee and her husband, since deceased, in 1943. A F G H is the public road leading from the old Joppa Road to Henry Record's Saw Mill mentioned in Nicholas Allender's will.

Nicholas Allender executed his last will and testament in 1885 and died in 1887. At the time his will was made and at the time of his death, he owned two farm units: (1) a farm consisting of Parcels B and E and additional acreage, and (2) a farm consisting of 68 acres (Parcel D) on the north side of the road A F G H. Nicholas Allender had received both of these farms by devise from his father and the description of the 68 acre parcel was described in his father's will in very similar language to that of the above quoted provision of Nicholas' will. Parcel B and the major part of Parcel E were contained in the same resurvey patent in 1738 and have been together ever since unless the will of Nicholas Allender segregated them. The land of Parcel B is hilly and wooded, and has never been cultivated, but there was an old fence on its eastern boundary. There was evidence to the effect that, both before and after the death of Nicholas, no one ever utilized the land or cut timber therefrom except the owners of Parcel E; and no one in the appellant's chain of title ever made any claim to Parcel B until 1951.

The appellants contend that both Parcels B and D lie on the left hand side of the public road mentioned in Nicholas Allender's will and this road *separates* them from the *rest* of Nicholas' real estate; therefore a construction that would determine that his son, William R. Allender, received Parcel B would not be inconsistent with the phrase of the will which says, "said portion being separate from the rest of my real estate." The appellee, on the other hand, claims that the first phrase of William R. Allender's devise was of "that portion of my real estate lying on the left hand side of the public road," but this first phrase was modified by the subsequent phrase "said portion being separate from the rest of my real estate"; consequently, the portion that William R. Allender received was that portion of the testator's real estate that was

on the left hand side of the road *and* was separate from the rest of the testator's real estate, which was Parcel D.

As a rule, a will is to be construed as any other document, with the exception that no technical words are necessary in a will. The construction of a will is a matter of law for the court to determine, except where there are latent ambiguities to be considered. The primary object in construing a will is to ascertain the intention of the testator from the whole instrument, or from the instrument as read in the light of surrounding circumstances and then to give effect to that intention if it be consistent with the rules and policies of the law. What a testator meant must be gathered from what he said in the will, as viewed from the standpoint he occupied at the time of its execution. *Miller, Construction of Wills,* secs. 8, 9. And all "the clauses and every word in a will should receive such a construction as that, while effect is given to each, they are all made to harmonize with each other, so as to reach the general plan or scope of the entire will." *Miller op. cit.,* sec. 11.

Applying the above rules of construction, we think there is little difficulty in ascertaining the testator's intention. By the explicit language used, he devised unto William R. Allender "that portion of my real estate lying on the left hand side of the public road" and then modified this "portion" to that part that was "separate from the rest of my real estate." It is conceded that both Parcels B and D lie on the left hand side of the road, but D is the only parcel that is *separated* from the rest of his real estate, unless we hold that the testator intended the old country road in 1885 to separate Parcels B and E. This possibility seems very remote to us. In order to construe the will in this manner, we would be required to hold that the latter phrase is meaningless; because, if the testator had left out this phrase, he would then have devised to William R. "that portion of my real estate lying on the left hand side of the public road," which would have been Parcels B and D. He need have said no more. However, we have seen above that each word and clause in a will must be given effect and made to harmonize with the entire will. Moreover, it should be noted that the word "portion" is used

in the singular. Had the testator intended to devise both Parcels B and D unto William R., it would have been quite simple for him to have said: "To my son, William R., *those portions* of my real estate on the left hand side of the public road, being separated from the rest of my real estate *by said public road,*" or to have used some other language of similar import. In addition, it seems highly improbable that the testator would intend to segregate this rather small parcel of little value from the large parcel with which it had been historically associated for some one hundred and fifty years, without making such intention clear and specific. In his opinion, Judge Day said concerning this:

> "After definitely limiting his son William to a parcel of land entirely separated from the remainder of his land would it be reasonable to assume that he intended to include therewith a small, comparatively worthless and entirely separate parcel of land, which had always been a portion of the tract of land devised to his son, Nicholas Bowen Allender? The Court cannot believe that such was ever the intention of the testator. Such action on his part would have been illogical, unreasonable and contrary to the definite terms of his Will."

We agree with Judge Day, and hold that under the proper construction of the Will of Nicholas Allender his son, William R. Allender, receive Parcel D, but did not receive Parcel B; which means, for the purposes of this case, that the appellee has established a good record title to Parcel B, the land in dispute. It, therefore, becomes unnecessary to consider the question of adverse possession.

*Judgment affirmed, with costs.*