PRIDE MARK REALTY, INC. *v.*
CARL B. MULLINS ET UX.

[No. 649, September Term, 1975.]

*Decided March 3, 1976.*

498

The cause was argued before THOMPSON, MOYLAN, MENCHINE and LOWE, JJ.

*Josef B. Brown* and *Richard E. Ekstrand*, with whom were *Reichelt, Nussbaum & Brown* on the brief, for appellant.

*Joseph C. V. Ferrusi* for appellees.

LOWE, J., delivered the opinion of the Court.

Despite opinions expressed to the contrary, most appellate courts try to meet, rather than to avoid, the issues raised upon appeal. Perhaps on too many occasions, particularly when the questions are intriguing, we have succumbed to the siren's song, and treated issues raised here but improperly preserved below. The issue here discussed is of that nature, enticingly interesting but improperly preserved. Though initially tempted, we, like Odysseus, have lashed ourselves to the foremast to avoid the consequences of succumbing to appellant's seductive song.

A jury of the Circuit Court for Prince George's County returned a verdict against appellant, a realty corporation, in the amount of $17,355.00 for having negligently procured the sale of a property without having verified that the seller was the sole owner. The crux of the issue before the jury was whether appellant owed appellees, the buyers, a duty and, if so, whether that duty was violated.

At the close of the plaintiffs' (appellees') case, defendant (appellant) moved for a directed verdict because:

> "There is no testimony showing the duty owed by the defendant to the plaintiff."

Judge James F. Couch, Jr., who was presiding, did not agree. He said:

> "That is a matter of law and I found it. I am sorry but — are you aware of it?

MR. BROWN: No.

MR. FERRUSI: A statute.

THE COURT: There is a statute involved and a code of ethics which establishes by the statute a standard of care which spells out that the licensee, a real estate man, is required to acquaint himself with all the facts.

MR. BROWN: All of the facts that I am aware of.

THE COURT: That makes a question for the jury. That does establish the standard of care." [1]

At the close of its own case, appellant renewed its "previous motion," presumably for the same reason as when it first moved for a directed verdict. The motion was denied as to the negligence count (although, because of a lack of evidence, the judge did not permit a deceit count to go to the jury). Appellant's single issue on appeal relates to the instruction Judge Couch subsequently gave to the jury:

"Did the Trial Court Err When, in Its Instructions to the Jury, It Set, as a Matter of Law, as the Standard of Care for a Real Estate Broker, the Provisions of Article 56, Section 224 of the *Annotated Code of Maryland* and the Code of Ethics of the Real Estate Commission?"

After instructing on general legal principles, Judge Couch

---

1. Md. Code, Art. 56, § 224 provides that the Real Estate Commission may suspend or revoke the license of any real estate broker or real estate salesman who, after proper hearing, is "deemed to be guilty of: . . .

(r) Negligence, or failure to disclose or to ascertain and disclose to any person with whom such licensee is dealing, any material fact, data, or information, concerning or relating to the property with which such licensee is dealing, which such licensee knew or should have known, or . . .

(u) Violating any provision of a regulation or of the code of ethics theretofore adopted by the Commission."

The Code of Ethics of the Real Estate Commission provides in Article 4,

"The licensee should make a reasonable effort to ascertain all material facts concerning every property for which he accepts the agency so that he may fulfill his obligation to avoid error, exaggeration, misrepresentation or concealment of material facts."

narrowed the question to be decided by discussing with the jury the definition of negligence. He explained that:

> "Broadly it is defined as doing something by a person which a reasonably prudent person, under the similar or like circumstances that the defendant was in, would not have done; or, conversely, doing something by a defendant which a reasonably prudent person with the same circumstances would not have done under those same or similar circumstances."

He then set forth his interpretation of the standards of a reasonably prudent person in appellant's role:

> "And that may sound like so many words to you, and you may decide, 'How am I going to decide whether somebody is negligent or not other than trying to guess what a reasonably prudent person would have done?' In most cases, and this is no exception, there is some help in the sense that it has been provided by the legislature that the standard of care in the operation of business by a real estate agent or a broker has been fairly well set out before you. The Court says to you as a matter of law that it is required of one who does operate a real estate business, his own business or as a licensee, normally holding a real estate license, that that person must disclose or ascertain and disclose to any person with whom the licensee is dealing any material fact, data or information concerning or relating to the property with which such licensee is using, which such licensee, either knew or should have known.
>
> That establishes the standard of care against which a real estate agent or real estate broker is measurable.
>
> It is further provided that the licensee should make a reasonable effort to ascertain all of the material facts concerning every property for which

he accepts an agency so that he may fulfill his obligations to avoid error, exaggeration, misrepresentation or concealment of material fact."

At the conclusion of his instructions, the judge asked counsel:

"Very well, gentlemen. Are there any exceptions?"

To which appellant replied:

"No exceptions, Your Honor."

One could hardly envision a clearer failure to comply with Md. Rule 554 d, which states in pertinent part:

"If a party has an objection to any portion of any instruction given, . . . he shall before the jury retires to consider its verdict make such objection stating distinctly the portion, . . . to which he objects and the ground of his objection. . . ."

Appellees declined in their brief to meet the substantive question raised by appellant. They not only asked that we "dismiss the appeal" but questioned our right to consider it. They pointed out that § e of Md. Rule 554 says:

"Upon appeal a party in assigning error in the instructions, shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the grounds of objection distinctly stated at the time, *and no other errors or assignments of error in the instructions shall be considered by the appellate court.*" (Emphasis added).

## Failure to Object

Appellant did not reply by brief to appellees' procedural contention that the appeal should be dismissed. At argument, however, appellant contended that the trial judge

was fully aware of the principles of law advocated by counsel for the defendant before the instructions were given as a result of the motions for directed verdict. Therefore, the motions for directed verdict provided a "substantial compliance with the requirements" of Md. Rule 554 d and with e as well. It cited *Merritt v. Darden,* 227 Md. 589 for that contention and argued that, as in *Merritt,* " . . . inasmuch as . . . the trial judge was fully aware of the principles of law advocated by counsel for the defendant before the instructions were given, . . . [the motion for a directed verdict] was [in] substantial compliance with the requirements of the rule, and that what was done was sufficient to preserve the right of the defendant to a review by this Court under Rule 554 e." *Id.* at 597-598. Furthermore, appellant pointed to our own opinion in *Kowalewski v. Carter,* 11 Md. App. 182 where "we [were] not persuaded to dismiss the contention on what we believe[d] in the circumstances [t]here to be a fine distinction." *Id.* at 192.

We note that, in both cases cited by appellant, when the trial judge called for exceptions at the conclusion of the charge, some affirmative exception was taken. Each case turned not on whether the exception was taken, but on whether the grounds therefor were sufficiently specified to conform to the rule. *Merritt,* 227 Md. at 597; *Kowalewski,* 11 Md. App. at 192. In *Kowalewski,* no formal ground was stated when the exception was taken. In *Merritt* " . . . counsel for the defendant, in excepting to the instructions, stated that he relied on the objections he had made when the charge to the jury was discussed at the preinstruction conference." *Id.* at 595. In the instant case, no exception at all was taken. To the contrary, appellant expressly stated that it had none. The Court of Appeals has stated most emphatically that it:

> " . . . will only concern [itself] on appeal with the exceptions to the charge filed by the objecting party *at the conclusion of the charge itself.*" (Emphasis added). *Greenbelt Coop. Pub. Ass'n v. Bresler,* 253 Md. 324, 365, citing *Jones v. Federal Paper Bd. Co.,* 252 Md. 475, 490.

Therefore, in order to be in "substantial compliance" with Rule 554, some exception must be made following the instructions. Furthermore, the Court of Appeals has used language preclusive of the appellate court's right to review instructions challenged on appeal but not objected to below:

> In *Levine v. Rendler*, 272 Md. 1, 13 and in *S & S Bldg. Corp. v. Fidelity Storage*, 270 Md. 184, 189, the Court said "the point is not before us for review."
>
> In *Barwood, Inc. v. Georgi*, 253 Md. 29, 31, the Court said that because of a failure to except, Rule 554 e "precludes our consideration of their complaint."
>
> In *Jones v. Federal Paper Bd. Co.*, 252 Md. 475, 490, as in *Hill v. Coleman*, 218 Md. 1, 2, the Court held that "there is nothing before us for review on these issues. . . ."
>
> In *Goldman v. Johnson Motor Lines*, 192 Md. 24, 30 the Court held that, because of the failure to comply with the rule, it was "unable to pass upon that question on appeal."
>
> Finally, in *Barone v. Winebrenner*, 189 Md. 142, 146 and in *Smith v. Carr*, 189 Md. 338, 341, the Court found that in the absence of an objection it is "prevented on appeal from considering errors in the instructions given in [the] case."

These cases seem to indicate that we are proscribed from reviewing a lower court's instructions to the jury unless objection is made after they are given. The strictness of these rulings requiring exact adherence to Rule 554 e would seemingly leave no room for lingering doubts about the absoluteness of the application of the rule. We founder, however, upon an exception to the strict application of this rule which we find in an earlier case, *State v. Wooleyhan Transport Co.*, 192 Md. 686. There, no objection was made following the instructions. However, the trial judge in *Wooleyhan* had certified to the Court of Appeals that the

particular objection was made to him and was overruled in chambers after he agreed to use the objectionable prayer as part of his instructions — but before the instructions were given. Reasoning that the purpose of the rule had been satisfied, the Court of Appeals decided to consider the question raised on appeal: [2]

> "The purpose of requiring the objection to any part of the charge to be presented to the trial judge before the jury retires is to give the trial judge an opportunity to amend or supplement his charge if he deems an amendment necessary. *Fisher v. Baltimore Transit Co.*, 184 Md. 399, 402, 41 A. 2d 297. In the case before us the trial judge certified *that the particular objection was made to him before he granted the prayer and delivered the charge to the jury,* which he overruled. *He specifically had the benefit of that objection before the jury retired.* The only thing out of order in this case was the failure to have the stenographer in chambers to take down the objection. This was later formally done at the suggestion and with the approval of the trial judge. Rule 6, Sub-section (c) and (d), *supra,* did not contemplate the dismissal of an appeal *under the circumstances in this case.* The trial judge passed on the question, after objection, before the jury retired and the question is before us here." (Emphasis added). *State v. Wooleyhan Transport Co.*, 192 Md. at 689-690.

## The Issue on Appeal.

In the case at bar, appellant contends, as was contended in *Wooleyhan,* that the issue inherent in the instruction to

---

2. The question ʰat the Court decided to consider in Wooleyhan was, whether the evidence of damages (in a wrongful death case) was sufficient to provide a jury question under the pecuniary loss rule. That question had been attacked below by a "demurrer prayer" which, at the time (1948), was comparable to a present day motion for directed verdict which is necessary to preserve the question of sufficiency of evidence. *Cf.* Webb v. Oxley, 226 Md. 339, 347; State v. Heffelfinger, 226 Md. 493, 496.

which appellant failed to object (*i.e.*, whether the statutory standard could be used in a negligence case) was already before the judge, satisfying the requirement that the judge have the benefit of the objection in time to correct any error in his instructions. Although the trial judge did not certify to this as was done in *Wooleyhan*, the issue was before him on the motions for directed verdict as is reflected in the record transcript.[3] Thus, at first blush, *Wooleyhan* seems to provide us with an analogous means to consider the issue raised on appeal based upon the theory of substantial compliance with the Rule.

---

**3.** The pertinent portions of the motion at the end of plaintiffs' case are as follows:

"MR. BROWN: At this time on behalf of the defendant I would like to move for a directed verdict if we may approach the bench.

THE COURT: Come up.

(Whereupon, counsel approached the bench and the following proceedings were had out of hearing of the jury:)

MR. BROWN: There is no testimony showing the duty owed by the defendant to the plaintiff.

THE COURT: That is a matter of law and I found it. I am sorry but — are you aware of it?

MR. BROWN: No.

MR. FERRUSI: A statute.

THE COURT: There is a statute involved and a code of ethics which establishes by the statute a standard of care which spells out that the licensee, a real estate man, is required to acquaint himself with all the facts.

MR. BROWN: All of the facts that I am aware of.

THE COURT: That makes a question for the jury. That does establish the standard of care."

At the conclusion of the defendant's case, the original motion was renewed.

"THE COURT: Mr. Brown, for the purposes of the record you have a motion?

MR. BROWN: Yes. I would like to renew my previous motion for a directed verdict on both counts.

THE COURT: Very well. Mr. Ferrusi, do you want to have anything to say?

MR. FERRUSI: Well, I will object for the record, you know.

THE COURT: Very well, the motion as to Count One, the negligence count, is denied, and the motion as to Count Two, the deceit count is granted on the basis that there is no evidence in the case showing that any omission of a material fact indeed was made with the intent to defraud, which is one of the five key elements in deceit."

In view of our result, we need not decide whether the propriety of the use of the statutory standard of care was sufficiently raised by objection, even if brought to us as a sufficiency of the evidence issue.

### Stare Decisis

" 'The doctrine of *stare decisis,* important as it is, is not to be construed as preventing us from changing a rule of law if we are convinced that the rule has become unsound in the circumstances of modern life,' *White v. King,* 244 Md. 348, 354, 223 A. 2d 763 (1966)." *Hearst Corp. v. St. Dep't of A. & T.,* 269 Md. 625, 643-644.

Reliance upon such circumstantially restricted authority as *Wooleyhan* is an uncertain practice at best, but especially here since that case has been undermined by subsequent decisions of the Court of Appeals. Within six years of the *Wooleyhan* holding that an objection in chambers (before instructions and not of record) sufficed to permit the issue to be considered on appeal, the Court in *Ritterpusch v. Lithographic Plate,* 208 Md. 592, 602, rejected a similar argument and stated that:

"Clearly, *the* controlling *objection* and the one *to which appellate review is restricted, is that made after the charge has been delivered."* (Emphasis added).

### "Precise Rubrics"

Seeking guidance in determining which direction to follow, we are reminded that the Court of Appeals over the past decade and a half has increasingly inclined toward compelling strict compliance with its rules. In *Brown v. Fraley,* 222 Md. 480, 483, the measured restraint used by Chief Judge Brune in discussing the importance of adherence to the Rules should have pointed the direction to the observant and given pause to the wary:

"The Rules are established to promote the orderly and efficient administration of justice and are to be read and followed. Those here involved, we think, are not difficult to comprehend or to follow, and we do not wish to encourage such errors as have occurred here. . . ."

But the observant may have been diverted and the wary relieved as they read on to find that the Court, noting that dismissal was permitted but not mandated, chose to hear the case in spite of the infraction. Following *Brown v. Fraley,* but still perhaps in a less complex era, the Court, from time to time, has viewed infractions with leniency out of consideration for the litigants.[4]

As people and problems increased in number and complexity, the Court of Appeals was no longer able to indulge in the luxury of leniency. In addition, perhaps, the indignity of circumventing its own rules in order to protect litigants' rights jeopardized by careless practitioners, caused the Court's "measured restraint" to burst forth in obvious impatience. In *Lewis v. Germantown Insur. Co.,* 251 Md 535, 536-537, the Court said:

> "We sometimes wonder if the bar ever reflects upon the reasons why we have adopted and promulgated rules of practice and procedure. We wonder also how many practitioners pay any attention to what we have said about these rules. . . . Thus far, in enforcing the Rules, we have been reluctant to make use of our powers of remand and dismissal, more out of consideration for litigants than for members of the bar. Of late, it should be noted, we find ourselves becoming somewhat less considerate of the plight of litigants whose obligation to know and comply with the Rules, at least in theory, is no less than that of the attorneys they retain to represent them. . . ."

Although prior cases had "reminded" both bench and bar,

---

4. For example, in Eliason v. Funk, 233 Md. 351, 354, the Court held that Md. Rule 323 b did not apply to actions against public officers and that "the defense of immunity, or privilege, should be raised by the pleadings and not by a mandatory preliminary motion." Nonetheless, the Court treated such motion as a demurrer presumably because it appeared that both parties had done so. In Myers v. Montgomery Ward Co., 253 Md. 282, in order to reach the issue, the Court chose to permit a demurrer in the trial court to be treated as if it were a motion for summary judgment, "although the [trial] court did not so state in its memorandum. . . ." *Id.* at 289.

then "twitted" and "chided" them, *Isen v. Phoenix Assurance Co.*, 259 Md. 564, 570 is credited with finally drawing the line in rigidly applying the rules as "precise rubrics." In their oft quoted admonition, the Court made no attempt to obscure its annoyance with both bench and bar for their failure to be aware of the rules and apply them:

> "That we have chosen once more to twit both bench and bar in this regard should not provoke speculation that we have done so for any reason other than to focus attention upon the Rules and to remind all hands that they are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.'"

It could not have been lost upon the bench and bar that even after the lecture in *Isen,* the Court overlooked counsel's disregard for the rules in that case and "elected not to dismiss the appeal." However, at what may have been the breaking point, the Court repeated its warning issued two years before in *Lewis v. Germantown Insur. Co., supra,* that:

> "It must not be supposed, however, that the same degree of forbearance will be displayed, in the future, in respect of a similar disregard of the Maryland Rules." *Id.* at 543.

Ultimately the inevitable occurred. The leniency to which the bar had become accustomed came to an abrupt halt, first, in *Robinson v. Bd. of County Comm'rs*, 262 Md. 342, 346, and most recently in *Eastgate Associates v. Apper,* 276 Md. 698.

In *Apper v. Eastgate Associates,* 28 Md. App. 581, 585-586, this Court relied upon *Stitzel v. Kurz,* 18 Md. App. 525, *cert. den.* 269 Md. 761, to justify considering an appeal of "substantial merit" under Rule 1071.[5] We fully recognized

---

5. The Court of Appeals in Dackman v. Dackman, 252 Md. 331, 336, previous to Stitzel, reached the same result by invoking Rule 871, which is substantially the same as our Rule 1071.

that the appeal was technically premature under Md. Rule 552, § e; however, we forbore dismissing the appeal on the technicality that the lower court judge, after having directed a verdict, had failed to " . . . instruct the clerk to enter such verdict, and to note that it has been entered by the court's instruction. . . ." The reasons we expressed for overlooking the noncompliance below as had been done in *Dackman*, 252 Md. 331, was:

> "to save judicial time and unnecessary [litigants'] expense and in the belief that our action is in the best interest of the administration of justice." *Apper v. Eastgate Associates*, 28 Md. App. at 586.

Upon reversing us, the Court of Appeals made it clear that it would permit no further flexibility in the interpretation of its rules.

Faced with the decision of whether to strictly apply the rule or rely on the *Wooleyhan* rationale to permit us to decide the substantive question presented, we derive from *Eastgate Associates* that the Court of Appeals is now demanding strict compliance with the rules. We shall conform to that stricture. We, therefore, refuse to consider the assignment of error in the instructions because appellant has not complied with Rule 554.

### Circumvention Argued but Not Briefed

Appellant argued before us, in response to a question by the Court, that it should be allowed to rely upon its motions for directed verdict in order to raise the question of sufficiency of the evidence on appeal and thus reach the issue of whether the statutory standard of care used by the Court was proper. In *Meyer v. Gyro Transp. Systems*, 263 Md. 518, 532-533 the Court held that an issue was not waived even though raised for the first time by the Court at oral argument and neither briefed by appellant nor tried or decided by the lower court. On the other hand, in *Comptroller v. Aerial Products*, 210 Md. 627, 644-645, the Court held that a question not presented or argued in appellant's brief was not before it even though it was

brought to the attention of the Court during argument. See also *Hyde v. State*, 228 Md. 209, 218. Our Rule 1046 f seems to permit us similar discretion in reaching issues not briefed but raised at argument:

> "This Court *may* decline to *hear or consider* oral argument on any legal proposition or question of fact not presented in the briefs." (Emphasis added).

To the extent that we have such discretion, we decline to exercise it to consider the issue of the standard of care applicable in this case. We interpret *Eastgate Associates* to mean that we should no longer indulge litigants by considering questions tangentially raised or mentioned in passing by brief *or* oral argument.

> "Surely it is not incumbent upon this Court, merely because a point is mentioned as being objectionable at some point in a party's brief, to scan the entire record and ascertain if there be any ground, or grounds, to sustain the objectionable feature suggested." *State Roads Comm. v. Halle*, 228 Md. 24, 32.

Appellant here failed to preserve the issue by objecting to the instruction below, Md. Rule 554 d and e, and has waived the sufficiency of the evidence issue by failing to raise it in its brief. *Harmon v. State Roads Comm.*, 242 Md. 24, 29.

> "Appellants apparently misunderstood why the point was not 'before us for decision.' . . . It was because of their failure, through lack of diligence or deliberate and considered action, to present it to the Court properly. Although the above mentioned contention was not specifically 'before us for decision,' the only reason that it was not was the fact that appellants by failing to raise and argue it in their brief waived the same. Maryland Rule 831, 831 C 2, 831 C 4; *Comptroller of Treasury v. Aerial Products*, 210 Md. 627, 644-645, 124 A. 2d 805; *Mullan v. Mullan*, 222 Md. 503, 161 A. 2d 693." *Nutter v. Baltimore*, 232 Md. 210, 213.

There would be no need for appellate counsel if it were our role to review all records on appeal, seeking contentions of probable error to which we would then respond. Seldom would a case be concluded at the trial level for few litigants would fail to take advantage of such inexpensive review. Appellees' counsel made a deliberate decision on behalf of his clients to cast all their eggs in one basket, relying on rules provided by the Court of Appeals. For an appellate court to use its discretion to reach and raise issues disregarded by counsel for appellants necessarily prejudices the result, not in favor of him who complies and relies upon our rules, but in favor of him who has not. That procedure treads dangerously near a judicial denial of due process.

It is unfortunate that future litigants who may face the standard of care question raised here must deal with the uncertainty of *nisi prius* precedent until we can properly speak to the question. In the past, to overcome the onus of appearing to avoid issues or relying too heavily upon technicalities of procedure, we perhaps too often have resorted to stretching the rules in order to reach questions not properly before us, particularly when the unpreserved allegation of error was not error at all. Unfortunately, by relaxing or circumventing the procedural rules, we also lull the bar into laxity in observing those rules in cases "as yet untried." The mandate in *Eastgate Associates, supra,* provides a clear directive.

When an issue, although raised below, is not raised on appeal, it is not before us and we are as completely denied the right to review such question as if the appeal were premature or had not been taken at all. This appeal will be dismissed.

*Judgment affirmed; costs to be paid by appellant.*