## UNINSURED EMPLOYERS' FUND *v.* ALGIE MERRITT, ET AL.

[No. 11, September Term, 1971.]

*Decided September 28, 1971.*

74

The cause was argued before THOMPSON, MOYLAN and GILBERT, JJ.

*William R. Levasseur, Special Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Martin E. Gerel,* with whom were *Thomas F. Santer* and *Ashcraft & Gerel* on the brief, for appellee, Merritt. *Dimitri P. Mallios* for appellee, Cain.

GILBERT, J., delivered the opinion of the Court.

Uninsured Employers' Fund [the Fund], dissatisfied with the judgment of the Circuit Court for Prince George's County, affirming an award of the Workmen's Compensation Commission, appeals.

The Fund raises the question, "Was the claimant an employee employed within the meaning of the Workmen's Compensation law, Article 101, and was he employed by an empolyer who was engaged in the building of a private dwelling without pecuniary gain, thereby making said claimant an independent contractor?"

Algie Merritt filed a claim with the Workmen's Compensation Commission on October 9, 1968,[1] in which he alleged that on August 30, 1968 he was injured, "While descending a ladder from a roof of a garage, the ladder slipped out from under me." Merritt sustained a fracture of the right heel and lost time from work from the day of the accident to February 3, 1969. In his claim Merritt had listed two employers, James Cain, Jr. [Cain] and David F. McKay [McKay]. The testimony before the Workmen's Compensation Commission revealed that Cain, who was engaged in a service station and fuel oil business in Washington, D.C., was the owner of a parcel of ground at Eagle Harbor, Maryland, and that he was desirous of building a home on the property. He was referred by a friend to McKay. Cain contacted McKay and McKay agreed, according to Cain, that he would "build my house for me." No agreement was made as to the amount McKay would charge, but it was agreed that McKay would tell Cain at the end of each week how much Cain owed him for that particular week. McKay was usually paid in cash and he in turn would pay Merritt, at the rate of $4.00 an hour, with his own personal check. McKay said he considered himself to be a supervisor and not Merritt's employer. As supervisor he felt he had the power to hire and fire other persons on the job. While McKay testified that Cain hired Merritt, both Merritt and Cain stated that it was McKay who did the hiring. McKay would advise Cain as to materials that were needed and sometimes he would order them. There were occasions when materials were billed to what McKay

---

1. The claim form was dated September 25, 1968, but actually filed on October 9, 1968.

described as a defunct construction business that he formerly owned. McKay explained that the reason the materials were billed to the defunct business was for the purpose of Cain's obtaining better prices. McKay suggested changes in the building from time to time and directly supervised Merritt. Merritt testified that he received and followed orders from McKay.

At one time prior to the accident, Merritt had asked McKay about social security and withholding taxes not being deducted from his wages and McKay told him, "he would take care of it."

After Merritt's injury, Cain, through McKay, gave Merritt $300.00 and Merritt executed a receipt. Cain describes this as a gratuity, because Merritt was injured and he felt sorry for him.

The Commission found that Merritt was the employee of McKay and ordered the payment of temporary total disability from the date of the accident until February 3, 1969, as well as the payment of the medical bills. Inasmuch as McKay was uninsured, the Fund was called upon to make payment.

At a rehearing which was requested by the Fund, et al., the Commission affirmed its previous finding. An appeal was entered to the Circuit Court for Prince George's County. No testimony was taken before the lower court, as counsel agreed that the record from the Commission was sufficient. Judge Meloy upheld the Commission.

The obvious question is: Whose employee was Merritt —McKay's or Cain's, or was he an independent contractor?

In *Snider v. Gaultney*, 218 Md. 332 at 336; 146 A. 2d 869 (1958), the Court of Appeals said:

> " 'Independent contractor' is not defined in the statute, but has been judicially defined as 'one who contracts to perform a certain work for another according to his own means and methods, free from control of his employer in all details connected with the performance of the work ex-

cept as to its product or result.' "
(Citations omitted).

McKay instructed Merritt when to report to work and "what kind of work to do at that time, what board to move, what room to build." McKay kept time sheets or hours on Merritt, and Merritt was paid at an hourly rate. "The fact that a workman is paid by the hour and is not required to complete a definite task is an indication that he is an employee." *Williams Construction Co. v. Bohlen,* 189 Md. 576, 582 (1948). We think it patent that Merritt was not an independent contractor.

A decision of the Workmen's Compensation Commission is *prima facie* correct and the burden of proving otherwise is upon the party attacking the same. *Zentz v. Peters,* 11 Md. App. 1 (1971); *Symons v. Grier & Sons,* 10 Md. App. 498 (1970); *Thompson v. Paul C. Thompson & Sons,* 258 Md. 391, 394 (1970); *Talley v. Dept. of Correction,* 230 Md. 22, 24 (1962); *Williams Construction Co. v. Bohlen, supra.* However, where the Commission considers conflicting evidence as to essential facts and draws therefrom one of several different possible inferences, there may be imposed on the party attacking the Commission's decision "merely a burden of persuasion, and not necessarily a burden of additional proof." *Williams Construction Co., supra.* Judge Meloy, sitting as a jury, drew from the testimony taken before the Commission the same inference as the Commission and found McKay to be Merritt's employer at the time of the accident. Where facts or inferences that can be drawn therefrom or both are in dispute, such matters are jury questions or for the court sitting as a jury. In *Thompson v. Paul C. Thompson & Sons, supra,* it is stated:

> "It is equally well settled that where the terms and manner of employment are disputed, and different inferences may be drawn therefrom, the issue as to the relation that existed between

the parties is a mixed question of law and fact to be determined by the trier of the facts under proper instructions." See also *L. & S. Construction Co. v. State Accident Fund,* 221 Md. 51, 59 (1959) ; *Talley v. Dept. of Correction, supra.*

The Fund cites *Keitz v. National Paving and Contracting Company,* 214 Md. 479, 491 (1956), as setting forth the *criteria* that may be considered in determining the master-servant relationship. These are :

> "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct and (5) whether the work is a part of the regular business of the employer. Standing alone, none of these *indicia,* excepting (4), seems controlling. The decisive test is whether the employer has the *right to control and direct the servant in the performance of his work and in the manner in which the work is to be done."*

However, both the Commission and the trial court, sitting as a jury, drew inferences from the testimony, adverse to McKay. There was evidence which, if believed, answered each of the *criteria* set forth in *Keitz,* seriatim. (1) Merritt and Cain both testified that McKay hired Merritt, (2) McKay paid Merritt with McKay's personal check each Friday, (3) McKay had the power to fire Merritt, (4) the only instructions received by Merritt were from McKay, and (5) McKay agreed to build the house for Cain, and had been engaged in the construction business in the past. The "decisive test" is met by Merritt's affirmative answer to the question of whether it was McKay who told him when to report to work, "what kind of work to do at that time, what board to move, what room to build." McKay apparently established the hourly rate which Merritt was paid.

The Fund argues that this case is similar to *Clement*

*v. Minning,* 157 Md. 200 (1929). There Minning was the president of Cinder Block Corporation. His house was built from cinder blocks by mechanics that he employed. It was the only building project that he undertook. Later the house was advertised as the "Cinder Block Exhibit House." Minning's purpose in using cinder blocks in the construction of his home was admittedly to promote the business of the company of which he was president and thereby stimulate sales for the company. Holding that the erection of the dwelling was not a "trade, business or occupation" which Minning "carried on" for himself or as a corporate officer, the Court said:

> "The fact that he bought and used, for his own dwelling, some of the material produced by the corporation, of which he was part owner and chief executive, is not sufficient to impress upon his single and private building project the character of a vocation."

It denied Workmen's Compensation benefits to Clement because he was not an employee within the meaning of the Act.

At the time of the accidental injury to Merritt, the law then provided in Article 101, § 67 (4) :

> " *'Employment'* includes employment only in a trade, business or occupation carried on by the employer for pecuniary gain." [2]

We do not think that either *Clement* or sub-section (4) of section 67, Article 101, *supra,* is controlling here because Merritt was found to be McKay's employee, not Cain's. If Merritt had been Cain's employee, then the *Clement* case and sub-section (4) might have precluded his recovery under the Workmen's Compensation Act.

We think there was sufficient evidence to sustain the finding that Merritt was the employee of McKay at the

---

2. This section was, however, repealed by Chapter 741 of the Acts of 1970.

time of claimant's accidental injury. Our review of the evidence fails to convince us that the trial judge was clearly erroneous. Rule 1086.

*Judgment affirmed.*
*Appellant to pay the costs.*