CLINTON COMMUNITY HOSPITAL CORPORATION,
INC. *v.* MARYLAND COMPREHENSIVE
HEALTH PLANNING AGENCY

[No. 840, September Term, 1975.]

*Decided April 14, 1976.*

The cause was argued before MOYLAN, GILBERT and MELVIN, JJ.

*Patrick M. Pilachowski,* with whom was *William H. Manger* on the brief, for appellant.

*Louis E. Schmidt, Assistant Attorney General,* with

whom was *Francis B. Burch, Attorney General* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

This case has been before one county agency, two State agencies, two judges of the Supreme Bench of Baltimore City, the Court of Appeals, then another judge of the Supreme Bench, and now this Court.[1] We propose to sever the Gordian knot so as to untangle the procedural nightmare in which the parties have become enmeshed.

In order to make clear the use of our knife in cutting the knot, we shall set forth the tortuous path by which this matter has reached us.

Clinton Community Hospital Corporation (Clinton), a 33 bed general hospital in Prince George's County, made application in 1970 to the Director of Medical Facilities and Development Division of the Department of Health and Mental Hygiene for a "Certificate of Need" in order that Clinton might expand.[2] At or about the same time, a group of persons, of which Dr. Francis P. Chiaramonte is a member, proposed a new hospital that would be styled "Southern Maryland Medical Center" (Southern), and also applied for a "Certificate of Need." Both applications were submitted to the Comprehensive Health Planning Agency (CHPA), a division of the Department of Health and Mental Hygiene. Md. Ann. Code art. 41, § 206. CHPA forwarded the application to the Health Planning Advisory Committee (HPAC) for Prince George's County, a then largely advisory body.[3] Md. Ann. Code art. 43, § 559 (a-1). According to Clinton, Southern's proposed hospital was to be built " . . . 17,000 feet due south of . . ." a main runway of Andrews Air

---

1. In addition, certain aspects of the case have been before the United States District Court for the District of Maryland and the United States Fourth Circuit Court of Appeals.

2. Apparently, when a "Certificate of Need" has been issued pursuant to State law, federal funding is available under 42 U.S.C. § 246 (1970) [Public Law 89-749, 20 Stat. 1180 (1966)].

3. The members of HPAC are appointed by the Prince George's County Executive.

Force Base. Southern's hospital would also be approximately two miles southeast of Clinton's existing facility. In any event, HPAC, on March 1, 1971, recommended to CHPA that the Clinton application be denied and that a "Certificate of Need" be issued to Southern. On March 10, 1971, Clinton was notified of HPAC's conclusions, and Clinton noted an appeal to CHPA from the recommended denial. CHPA, on March 29, 1971, informed Clinton that it had reviewed the application, and it concurred in HPAC's recommendation.

Clinton, by some means not manifest in the record, found its way to the Baltimore City Court through "A Petition to Intervene." We glean from the record that the desired intervention was in the matter of the granting of the "Certificate of Need" to Southern. Judge Charles D. Harris, on September 17, 1971, sustained CHPA's demurrer to the petition to intervene on the ground that Clinton had not exhausted its administrative remedies although he opined that Clinton was a "Party Aggrieved" within the meaning of Md. Ann. Code art. 41, §§ 244-56 (Administrative Procedure Act).[4] Clinton then, in an effort to comply with the Administrative Procedure Act, appealed to the Board of Review of the Department of Health and Mental Hygiene. *See* Md. Ann. Code art. 41, § 206A. The Board conducted hearings and, thereafter, on November 1, 1972, entered "Findings of Fact, Conclusion and Decision"[5] which appellant states was communicated to it on December 5, 1972. The Board's affirmance of the CHPA's action allegedly concerned the sole issue of the denial of the certificate to Clinton and did not consider the issuance of the certificate to Southern. Clinton asserts that the Board should have decided both issues.

We were informed on oral argument that Clinton filed two appeals from the Board of Review in the Baltimore City Court. The first appeal was from the denial of the "Certificate of Need" to Clinton. That case, we were told, has

---

4. The propriety of that ruling is not before us, and we express no opinion thereon.

5. The Board's "Findings of Fact, Conclusion and Decision" is not included within the record.

not as yet been adjudicated. Clinton's other appeal was taken as a protestant from the Board's implicit upholding of the issuance of the "Certificate of Need" to Southern. Judge Paul A. Dorf granted a motion *ne recipiatur* which was filed by the Department of Health and Mental Hygiene. Clinton appealed to the Court of Appeals.[6] The Court, in an unreported per curiam opinion, *Clinton Community Hospital Corp. v. Dept. of Health and Mental Hygiene*, No. 153, September Term, 1973 (Ct. App., filed January 28, 1974), dismissed the appeal for failure to comply with Md. Rule 828 b 1, the record extract rule.

*Deus ex machina*, ten days later, on February 7, 1974, Clinton filed another "Order for Appeal . . ." in the Baltimore City Court. This time Clinton filed as a protestant in the matter of the granting by CHPA of the "Certificate of Need" to Southern.[7] Subsequently, on February 11, 1974, Clinton filed a 152 paragraph "Petition to Intervene" in the case in which it had noted the appeal on February 7, 1974. The "Petition" is Promethean, but unauthorized.

CHPA raised preliminary objections, Md. Rule 323, and the matter was heard before Judge James W. Murphy on March 17, 1975. Judge Murphy treated the motion raising preliminary objections as a motion for summary judgment, Md. Rule 610. The judge stated in his ruling of court:

6. Prior to January 1, 1975, this Court's jurisdiction was limited to the type of appeals specified in former Md. Ann. Code, Courts and Judicial Proceedings Article § 12-308 (a). Since December 31, 1974, we exercised ". . . exclusive initial appellate jurisdiction over any reviewable judgment, decree, order or other action of a circuit court and orphans' court, or the Maryland Tax Court." Courts Art. § 12-308. The Court of Appeals, however, in Shell Oil Co. v. Supervisor of Assessments, 276 Md. 36, 343 A. 2d 521 (1975), held that the Maryland Tax Court is not a court within the meaning of the State Constitution, and that appeals from its decisions must be noted in the first instance to the circuit court. The net effect of the holding in *Shell* is that Courts Art. § 12-308 has been judicially amended to read substantially as it did prior to the enactment of Laws 1975, ch. 448, § 1, when the Maryland Tax Court was omitted from that section.

7. We note that this is an appeal *directly* from the CHPA as opposed to the earlier appeals to the Baltimore City Court from the Board of Review's action. Further, we observe that the February 7, 1974, appeal should have been dismissed for failure to exhaust administrative remedies or, alternatively, on the basis of *res judicata* because of the prior Court of Appeals dismissal which had the effect of denying standing to Clinton to protest Southern's "Certificate of Need."

"Summary Judgment granted in favor of [CHPA] .... [Further,] [t]he Appeal is dismissed." The hearing judge based his ruling on his conclusion that Judge Dorf's decision in the prior case ". . . went directly to the merits of the controversy. . . ."

We shall affirm. We observe that the "Certificate of Need" was issued to Southern in 1970. Even if we assume *arguendo* that the Board of Review had the matter before it in 1972 when it affirmed the decision of the CHPA, Clinton may not prevail.

Md. Ann. Code art. 41, § 206B (2) provides that "[a] party aggrieved by an adverse decision of action or failure to take action within the time prescribed by subsection (1) [30 days] . . . may file an appeal to the board of review . . . ." The Administrative Procedure Act, Md. Ann. Code art. 41, § 255 (a) authorizes judicial review for a ". . . party aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form . . . ." There is, however, a time limitation after which an appeal is not authorized. Md. Rule B4 a states:

> "An order for appeal [from an administrative agency] shall be filed within thirty days from the date of the action appealed from, except that where the agency is by law required to send notice of its action to any person, such order for appeal shall be filed within thirty days from the date such notice is sent, or where by law notice of the action of such agency is required to be received by any person, such order for appeal shall be filed within thirty days from the date of the receipt of such notice."

The record disclosed that the notice of the Board of Review's final decision was received by Clinton on December 5, 1972. Hence, Clinton had thirty days from that date to appeal to the Baltimore City Court. It did so, but, as we have said, Judge Dorf granted a motion *ne recipiatur*. Clinton then had its appeal therefrom to the Court of Appeals dismissed. The dismissal of the appeal by the Court of Appeals did not operate so as to confer upon Clinton the

right or privilege to intervene or file a new appeal within thirty days of the decision by the Court of Appeals. Assuming *arguendo* that Clinton was an aggrieved party, its right to appeal the granting of a "Certificate of Need" to Southern, expired on January 4, 1973. The "appeal" entered to the Baltimore City Court on February 7, 1974, was one year and three days too late. It was a nullity.

On oral argument, we were informed that the "Certificate of Need" is reissued every year. Even if that is true, the "Order for Appeal" in this case implies that the appeal is from the granting of the original "Certificate of Need" to Southern. It does not suggest that the appeal is from the renewal of the certificate, nor can we glean from Clinton's "Petition to Intervene" that such is the case.

It is readily apparent to us that Clinton's appeal and its sought intervention in its own appeal are both directed toward the initial granting of the "Certificate of Need" to Southern and not to any renewal thereof. In any event, if the appeal that was filed in the Baltimore City Court in this case were viewed as a renewal, it would meet the same fate as the 1971 appeal to the Baltimore City Court, *scilicet*, premature because of a failure to exhaust administrative remedies. In short, the path to the Courts would have to be trod anew.

A further comment with respect to what purports to be "Supplement No. 1 to APPELLANT'S APPENDIX." The "Supplement" contains material Clinton wanted, but was unable, to present to Judge Murphy. There is no warrant to submit to this Court material not already in the record. *See Community Realty Co. v. Siskos,* 31 Md. App. 99, 254 A. 2d 181 (1976). Thus, even if Clinton had prevailed here, we would assess court costs against it for its flagrant violation of Md. Rule 1028.

*Judgment affirmed.*
*Costs to be paid by appellant.*